# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

Thomas William Wilcox,                                  Civ. No. 11-3015 (JJK)

       Plaintiff,

v.

                               **MEMORANDUM**

Commissioner                                  **OPINION AND ORDER**
of Social Security,

       Defendant.

Gerald S. Weinrich, Esq., Weinrich Law Office, counsel for Plaintiff.

David W. Fuller, Esq., Assistant United States Attorney, counsel for Defendant.

JEFFREY J. KEYES, United States Magistrate Judge

      Pursuant to 42 U.S.C. § 405(g), Plaintiff Thomas William Wilcox seeks judicial review of the final decision of the Commissioner of Social Security ("the Commissioner"), who denied Plaintiff's application for disability insurance benefits. This matter is before the Court on the parties' cross-motions for summary judgment. (Doc. Nos. 11, 13.) The parties have consented to this Court's exercise of jurisdiction over all proceedings in this case pursuant to 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73. (Doc. No. 8.) For the reasons stated below, the Court denies Plaintiff's motion and grants Defendant's motion.

## BACKGROUND

### I.    Procedural History

Plaintiff protectively filed his present application for disability insurance

benefits in July 2007, alleging a disability onset date of May 30, 2006.  (Tr. 13,

112.)[1]  The application was denied initially and on reconsideration.  (Tr. 61–65,

68–70.)  Plaintiff timely requested a hearing, which was held before an

Administrative Law Judge ("ALJ") on November 16, 2009.[2]  (Tr. 23–47, 71–72.)

On December 9, 2009, the ALJ issued an unfavorable decision.  (Tr. 10–22.)

Plaintiff sought review of the ALJ's decision, but the Appeals Council denied the

request for review on September 8, 2011.  (Tr. 1–6.)  The denial of review made

the ALJ's decision the final decision of the Commissioner.  *Clay v. Barnhart*, 417

F.3d 922, 928 (8th Cir. 2005); *Browning v. Sullivan*, 958 F.2d 817, 822 (8th Cir.

1992); *see* 42 U.S.C. § 405(g).

On October 13, 2011, Plaintiff filed the instant action with this Court

seeking judicial review pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3).  The

---

[1]     Throughout this Opinion, reference to the administrative transcript for the present case, Civ. No. 11-3015 (JJK), is made by using the abbreviation "Tr."

Tr. 13 states that the application was protectively filed on July 16, 2007, and Tr. 112 states that the application was filed on July 20, 2007.  This discrepancy makes no difference in the Court's determination of the issues before it.

[2]     Plaintiff originally attended a hearing before a different ALJ *pro se* on July 10, 2009.  (Tr. 48–56.)  The hearing was postponed when Plaintiff decided to seek representation.  (Tr. 26, 48–56.)

parties thereafter filed cross-motions for summary judgment. *See* D. Minn. LR 7.2.

## II. Statement of Facts

Plaintiff was born on May 19, 1962.[3] (Tr. 112.) At the time of his alleged onset of disability of May 30, 2006, he was forty-four years old. (Tr. 15.) Plaintiff has a high school education. (Tr. 30–31.) He has past relevant work as a welder, which is medium exertional, skilled work (Tr. 194, 197), and as a forklift operator/pallet assembler,[4] which is medium exertional, semi-skilled work (Tr. 42, 164–65). Plaintiff alleges that the following physical conditions prevent him from working: pain and swelling in his right leg and foot; post-traumatic arthritis in his right ankle, knee, and hip; and early degenerative changes to his left ankle and hip. (Tr. 156; *see* Tr. 15, 269–70.)

In 1984, Plaintiff was injured in a serious motorcycle accident, in which he suffered –

> multiple fractures in the right ankle, and multiple fractures in the foot and severe fracture of the tibia and fibula and pelvic fracture . . . . External fixator was applied for the pelvis [and] the lower leg, and he

---

[3]     Plaintiff's application states that he was born May 19, 1962. (Tr. 112.) At the November 9, 2009 hearing, the ALJ stated Plaintiff's date of birth as May 19, 1963, and was corrected by Plaintiff, who testified that he was born in 1962. (Tr. 27.) The ALJ's opinion, however, states Plaintiff's date of birth as May 19, 1963. (Tr. 18.) Either way, on the date of alleged onset, Plaintiff was between the ages of 18 and 44 and met the definition of "younger individual" under 20 CFR 404.1563. (*See* Tr. 18.)

[4]     This position was inaccurately stated in the record as a "Human Services Program Aide," D.O.T. Number 195-227-010. (*See* Tr. 42, 194, 197.)

> had failure of the tibia and fibula to heal.  He underwent bilateral iliac
> crest bone grafts to the right tibia.  These failed . . . . He ultimately
> underwent vascularized fibula bone graft and a tibial bone graft from
> the left side to the right side.  The fracture eventually healed.  The
> foot and ankle fractures healed.  The pelvis healed.

(Tr. 269.)  Plaintiff was unable to work for nearly three years, during which time

he received Social Security disability benefits.  (Tr. 17, 128, 269.)  He returned to

his work as a welder in 1988.  (Tr. 157.)  The condition of Plaintiff's right hip, leg,

and ankle gradually worsened over time, and he was forced to leave his

employment in 2003.  (Tr. 157; *see* Tr. 34.)  He worked as a forklift operator at a

pallet manufacturing company from 2003 to 2006, but as his physical condition

worsened, he again was forced to leave his employment.  (Tr. 34, 157, 164.)  In

2009, Plaintiff visited the Department of Rehabilitation Services to see if he could

be trained for a new line of work.  (Tr. 35–36.)

Plaintiff regularly sought medical treatment from 2003 to 2005, but he was

not seen for pain in his extremities until August 22, 2005.  (*See* Tr. 207–66.)  On

that date, Plaintiff reported to Mayo Clinic with ankle pain, and his doctor ordered

x-rays of both ankles.  (Tr. 244–46.)  The radiology report showed post-traumatic

deformities in the right tibia and fibula, degenerative arthritis in the right ankle,

joint space narrowing in the right ankle and foot, and surgical defects in the left

fibula.  (Tr. 231.)  It is clear from the record that that these conditions stemmed

from Plaintiff's 1984 motorcycle accident.  (Tr. 270, 226, 299.)

Plaintiff did not seek any relevant medical treatment from the time of his

alleged onset date of disability (May 30, 2006) until the time of his administrative

hearing (November 16, 2009). (Tr. 17; *see* Tr. 32–33 (testifying that he had no disability-related treatments for a "couple of years" prior to the administrative hearing); Tr. 299 (indicating there were no medical treatments in the Mayo medical system between 2005 and November 3, 2009).)

On September 11, 2007, Plaintiff underwent a consultative medical examination with Dr. Michael Kearney at the request of the Social Security Administration. (Tr. 267–70.) On examination, Dr. Kearney noted that Plaintiff had scarring throughout his right extremity and that his right leg was atrophied. (Tr. 269.) Plaintiff's right foot and ankle were stiff and his ankle motion was very limited. (*Id.*) His foot was non-tender, but his small toe was deformed. (*Id.*) His hip rotation range of motion was normal. (Tr. 270.) Dr. Kearney noted that he had reviewed the August 22, 2005 radiology report, which indicated arthritis in Plaintiff's right ankle. (*Id.*) Dr. Kearney obtained x-rays of Plaintiff's knee and pelvis. (*Id.*) Plaintiff's knee was in good alignment but showed "a moderate amount of arthritis" and narrowing. (*Id.*) His pelvis showed narrowing of both hips, which Dr. Kearney described as "early arthritis." (*Id.*)

Dr. Kearney opined that Plaintiff needed sedentary work and was able to stand for only one hour out of an eight-hour workday. (*Id.*) He relayed Plaintiff's self-report that he could walk one block without pain, but "two blocks is his maximum limit to walk." (Tr. 269–70.) He noted that Plaintiff should not climb ladders or work at a height, and added that Plaintiff's upper extremities were "completely normal." (Tr. 270.)

On September 13, 2007, Dr. Gregory Salmi reviewed Plaintiff's medical records and completed a Physical Residual Functional Capacity ("RFC") Assessment form at the request of the Social Security Administration. (Tr. 271–78.) Dr. Salmi opined that Plaintiff could frequently lift ten pounds, could stand and/or walk at least two hours in an eight-hour workday, and could sit for six hours in an eight-hour workday. (Tr. 272.) He also found that Plaintiff was "[l]imited from using [his] right leg to operate foot controls." (*Id.*) Dr. Salmi cited Dr. Kearney's findings in making his assessment. (Tr. 273.) Dr. Salmi's opinion was affirmed by Dr. Charles Grant on November 28, 2007. (Tr. 282–84.)

On November 3, 2009, two weeks before his hearing before the ALJ, Plaintiff went to Mayo Clinic to have his doctor complete an RFC.[5] (Tr. 298–99.) Plaintiff was told that the doctors in that office were not trained to provide an RFC. (*Id.* at 299.)[6]

III.   **Testimony at the Administrative Hearing**

A.   **Plaintiff's Testimony**

Plaintiff testified to the following at the hearing before the ALJ on November 16, 2009. (Tr. 23–47.) At the time of the hearing, Plaintiff was forty-

---

[5]   The doctor's report states that Plaintiff sought a medical opinion regarding limitations on his capacity to work, which suggests that Plaintiff sought an RFC. (Tr. 299.)

[6]   In 2011, Plaintiff's attorney submitted Plaintiff's recent Mayo Clinic medical records, which further document the condition of his lower extremities. (Tr. 297–304.) These records include x-ray results from June 24, 2011. (Tr. 297.)

seven years old, and he lived with his girlfriend in a house in Leroy, Minnesota. (Tr. 28.) Plaintiff's brother owned the house and was letting Plaintiff live there rent-free. (Tr. 33.) Plaintiff was not earning any income at the time. (Tr. 29.)

Plaintiff testified that he got himself up in the morning and could clean and dress himself. (Tr. 31.) He did not do much housework, but did a little cooking. (*Id.*) He did not go to the grocery store. (*Id.*) He smoked about fifteen cigarettes a day and took over-the-counter pain medications, but no prescription medications. (Tr. 31–32.) Plaintiff said he had not sought medical treatment in the last couple of years for his extremity problems. (Tr. 32–33.)

During a typical day, Plaintiff did "a lot of [I]nternet surfing" and watched some television. (Tr. 32.) He did not exercise, and he rarely visited people. (*Id.*) He said his pain prevented him from doing many physical activities, such as walking, but he did use a riding lawnmower and a riding snow blower. (Tr. 32– 33.) If he tried to shovel the steps, though, he would be in pain for the rest of the day. (*Id.*)

Plaintiff noted that he was a welder for fifteen years, and he discussed in detail his most recent work experience at a pallet shop in Austin, Minnesota. (Tr. 34.) He worked in the pallet shop from 2003 to 2006. (Tr. 34, 157.) His job title was supervisor, but his supervisory capacity was limited to telling his work crew what pallets needed to be made. (Tr. 34–35.) He frequently operated a forklift, repaired machines, and loaded pallets onto a truck. (Tr. 34.) He called the position a "glorified forklift driver." (Tr. 35.) Plaintiff left this job because it

involved too much walking and was too physically taxing on his legs.  (Tr. 34–35.)

Plaintiff spoke with Pat Lynch at Vocational Rehabilitation Services ("VRS") a few months before the hearing, who allegedly told Plaintiff that his chance of being retrained for a job that did not require physical activity was slim.  (Tr. 35–36.)

Plaintiff said he flew to Las Vegas recently, but he would not do it again because flying caused swelling in his right ankle, and walking to the airport and around the city caused extreme pain.  (Tr. 36–37, 41.)  He also stated that he drives, but he tries not to drive any more than he has to because it bothers his ankles and knees.  (Tr. 30, 39.)

When asked why he cannot work, Plaintiff said that he cannot get around on his feet, and that even when sitting, he feels a lot of pain and swelling in his right foot and hip.  (Tr. 37.)  He also noted that arthritis has developed in his left hip, leg, and ankle.  (Tr. 37–38.)  He stated that his hands and arms function pretty normally.  (Tr. 38.)

Plaintiff said he can watch an hour-long TV show while sitting in a chair, but he cannot walk for even a block without feeling pain.  (*Id.*)  He stated that he has pain and swelling every day, all the time.  (Tr. 38, 39.)  He said that once his pain is aggravated, it only diminishes if he elevates his legs and applies ice to his ankle.  (Tr. 38–40.)  He mostly feels pain in his right extremity, but he typically elevates both legs.  (Tr. 40.)  Plaintiff only took over-the-counter pain relievers,

8

such as aspirin and Tylenol. (Tr. 41.) He stated that he did not want to take a "heavy" drug like Oxycodone, and he noted that he did not have much money and thus only saw a doctor "if it's an extreme emergency." (*Id.*)

## B. Vocational Expert's Testimony

Mitchell Norman testified at the hearing as a vocational expert. (Tr. 41–46.) The ALJ posed to Norman the following hypothetical:

> [W]e've got a man in his mid-40s, high school education . . . . This individual is impaired by chronic (right lower extremity) and hip pain, secondary to multiple fractures from a motor vehicle accident in 1984 which required open reduction and internal fixation of several of the fractures. He suffers from post-traumatic arthritis in his right knee, hip and ankle and he also has early degenerative changes in his left calf and left ankle.
>
> I'm going to restrict him to modified sedentary, [RFC], 10 pounds occasionally, 5 pounds more frequently. I'm going to limit the time on feet to just one hour maximum per day out of the eight hours. I'm going to limit the walking to one block maximum at one time, and standing 15 minutes at a time.
>
> [Sitting] 8 of 8, with normal work breaks, and no machine operation using the . . . right lower extremity. Stairs only occasionally.

(Tr. 43.) Mr. Norman responded that such a person could not perform Plaintiff's past relevant work but could perform such sedentary work as order clerk, PC board assembler, and final assembler. (Tr. 43–44.) He explained that there were 6,500 order clerk jobs, 2,900 PC board assembler jobs, and 4,500 final assembler jobs in the state of Minnesota. (Tr. 44.) Mr. Norman also stated that the ALJ's RFC for this hypothetical individual was "technically" outside a "pure description of a sedentary job" due to the amount of time on feet. (*Id.*) But he

added that the DOT definitions for a sedentary job allow up to two hours a day on one's feet, which made the ALJ's RFC compatible with sedentary work.  (Tr. 44–45.)  *See* 20 C.F.R. § 404.1567(a).

In his second hypothetical, the ALJ asked whether these three jobs would be precluded for the same individual described in the first hypothetical if, "secondary to chronic pain [and] swelling, this individual had to elevate his leg for half-an-hour in the morning and . . . half-an-hour in the afternoon . . . ."  (Tr. 45.)  Mr. Norman responded that these jobs would probably be precluded "with the exception of a very understanding employer."  (*Id.*)  Plaintiff's counsel then made a closing point that, even in a sedentary job, Plaintiff would need to walk from the parking lot to his work station, which would aggravate Plaintiff's conditions and require him to elevate his leg.  (Tr. 45–46.)

## IV.    The ALJ's Decision and Findings

On December 9, 2009, the ALJ issued a decision concluding that Plaintiff was not disabled as defined by the Social Security Act at any time from the alleged onset date of May 30, 2006, through the date of the decision,[7] and he therefore denied Plaintiff's application for disability insurance benefits.  (Tr. 19.)  The ALJ followed the five-step procedure as set out in 20 C.F.R. § 404.1520(a)(4).  (Tr. 10–19.)  The Eighth Circuit Court of Appeals has summarized these steps as follows:

---

[7]    Plaintiff's earnings record showed that he had acquired sufficient quarters of coverage to remain insured through December 31, 2011.  (Tr. 13, 149.)

The Commissioner must determine: (1) whether the claimant is presently engaged in a "substantial gainful activity;" (2) whether the claimant has a severe impairment-one that significantly limits the claimant's physical or mental ability to perform basic work activities; (3) whether the claimant has an impairment that meets or equals a presumptively disabling impairment listed in the regulations (if so, the claimant is disabled without regard to age, education, and work experience); (4) whether the claimant has the residual functional capacity to perform his or her past relevant work; and (5) if the claimant cannot perform the past work, the burden shifts to the Commissioner to prove that there are other jobs in the national economy that the claimant can perform.

*Fines v. Apfel*, 149 F.3d 893, 894–95 (8th Cir. 1998) (quoting *Ingram v. Chater*, 107 F.3d 598, 601 (8th Cir. 1997).

The ALJ found that Plaintiff had not engaged in substantial gainful activity since his alleged onset date of May 30, 2006, therefore meeting the requirement at step one of the disability determination procedure. (Tr. 15; *see* Tr. 120.) At step two, the ALJ found that Plaintiff had the "following severe impairments: chronic right lower extremity and hip pain secondary to 1984 motor vehicle accident, status post[-]ORIF; post[-]traumatic arthritis of the right knee, hip and ankle; and early degenerative changes in the left hip and ankle . . . ." (Tr. 15.) At step three, the ALJ found that Plaintiff did not have an impairment or a combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R., Part 404, Subpart P, Appendix 1. (*Id.*)

At step four of the disability determination procedure, the ALJ found that Plaintiff had –

the residual functional capacity to perform sedentary work as defined in 20 C.F.R. 404.1567(a) as lifting and carrying 10 pounds

occasionally and 5 pounds frequently, standing and/or walking one hour of an 8 hour day, standing 15 minutes at a time and walking one block at a time, sitting 8 hours of an 8 hour day, limited to occasional climbing of stairs, and avoiding the operation of machinery with the right lower extremity.

(Tr. 15–16.)  The ALJ determined that Plaintiff's subjective "statements concerning the intensity, persistence and limiting effects of [his] symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment."  (Tr. 16.)  Based on Plaintiff's RFC, the ALJ found that he could not perform his past relevant work.  (Tr. 17.)

At step five, the ALJ determined that, based on the vocational expert's testimony, there were other jobs that existed in significant numbers in the national economy that Plaintiff could perform.  (Tr. 18.)  Thus, he ultimately concluded that Plaintiff was not under a disability, as defined in the Social Security Act, from May 30, 2006, through the date of his decision.  (Tr. 19.)

## DISCUSSION

### I.    Standard of Review

Congress has prescribed the standards by which Social Security disability benefits may be awarded.  "Disability" under the Social Security Act means the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  "An individual shall be determined to be under a disability only if his physical or mental impairment or

impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ." 42 U.S.C. § 423(d)(2)(A).

Review by the Court of the Commissioner's decision to deny disability benefits to a claimant is limited to a determination of whether the decision of the Commissioner is supported by substantial evidence on the record as a whole. 42 U.S.C. § 405(g); *Baker v. Barnhart*, 457 F.3d 882, 892 (8th Cir. 2006). "There is a notable difference between 'substantial evidence' and 'substantial evidence on the record as whole.'" *Gavin v. Heckler*, 811 F.2d 1195, 1199 (8th Cir. 1987) (citation omitted). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quotations omitted); *see also Haley v. Massanari*, 258 F.3d 742, 747 (8th Cir. 2001) (quoting *Beckley v. Apfel*, 152 F.3d 1056, 1059 (8th Cir. 1998)). "'Substantial evidence on the record as a whole . . . requires a more scrutinizing analysis." *Gavin*, 811 F.2d at 1199. "The substantial evidence test employed in reviewing administrative findings is more than a mere search of the record for evidence supporting the [Commissioner's] findings." *Id.* In reviewing the administrative decision, "'[t]he substantiality of the evidence must take into account whatever in the record fairly detracts from its weight.'" *Id.* (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951)).

In reviewing the record for substantial evidence, the Court may not substitute its own opinion for that of the ALJ.  *See Woolf v. Shalala*, 3 F.3d 1210, 1213 (8th Cir. 1993).  The Court may not reverse the Commissioner's decision merely because evidence may exist to support the opposite conclusion.  *Mitchell v. Shalala*, 25 F.3d 712, 714 (8th Cir. 1994); *see also Woolf*, 3 F.3d at 1213 (concluding that the ALJ's determination must be affirmed, even if substantial evidence would support the opposite finding).  The possibility that the Court could draw two inconsistent conclusions from the same record does not prevent a particular finding from being supported by substantial evidence.  *Culbertson v. Shalala*, 30 F.3d 934, 939 (8th Cir. 1994).

The claimant bears the burden of proving his or her entitlement to disability insurance benefits under the Social Security Act.  *See* 20 C.F.R. § 404.1512(a); *Young v. Apfel*, 221 F.3d 1065, 1069 n.5 (8th Cir. 2000); *Thomas v. Sullivan*, 928 F.2d 255, 260 (8th Cir. 1991).  Once the claimant has demonstrated that he or she cannot perform past work due to a disability, "the burden of proof shifts to the Commissioner to prove, first that the claimant retains the residual functional capacity to do other kinds of work, and, second that other work exists in substantial numbers in the national economy that the claimant is able to do."  *Nevland v. Apfel*, 204 F.3d 853, 857 (8th Cir. 2000).

## II.    Analysis of the ALJ's Decision

Plaintiff argues that the ALJ's decision is not supported by substantial evidence on the record as a whole because he erred in disregarding the

intensity, persistence, and limiting effects of Plaintiff's impairments. In response, the Commissioner contends that the ALJ properly assessed the credibility of Plaintiff's complaints and that, because the vocational expert concluded that there was work existing in significant numbers in the regional economy that Plaintiff could perform, substantial evidence in the record supports the ALJ's decision.

### A. Whether Substantial Evidence Supports the ALJ's RFC

In effect, Plaintiff argues that the ALJ's RFC determination is not supported by substantial evidence on the record as a whole because it fails to take into account Plaintiff's alleged limitations related to standing, walking, and elevating/icing his lower right extremity. "The Commissioner must determine a claimant's RFC based on all of the relevant evidence, including the medical records, observations of treating physicians and others, and an individual's own description of his limitations." *McKinney v. Apfel*, 228 F.3d 860, 863 (8th Cir. 2000) (citing *Anderson v. Shalala*, 51 F.3d 777, 779 (8th Cir. 1995)). The ALJ gave Plaintiff a modified sedentary RFC, which included "standing and/or walking one hour of an 8 hour day, standing 15 minutes at a time and walking one block at a time, sitting 8 hours of an 8 hour day, limited to occasional climbing of stairs, and avoiding the operation of machinery with the right lower extremity." (Tr. 16.) He did not include a limitation that Plaintiff must elevate and ice his extremity.

At the hearing, Plaintiff claimed he could not walk for even one block without pain. (Tr. 38, 40.) But that claim is not supported by the record. During

15

the September 11, 2007 exam, Plaintiff told Dr. Kearney that he could walk a block without pain (Tr. 269), and Dr. Kearney characterized two blocks as a "maximum limit." (Tr. 270.) Dr. Salmi found that Plaintiff could "[s]tand and/or walk . . . at least 2 hours in an 8-hour workday." (Tr. 272.) In making his RFC determination, the ALJ "relie[d] highly" on Dr. Kearney's findings and opinion. (Tr. 17.) The ALJ's decision to give substantial weight to Dr. Kearney's consultative opinion is reasonable because, in this very thin medical record, Plaintiff saw no treating physicians during the relevant time period, and Dr. Kearney was the only examining physician that Plaintiff saw. Further, in his brief, Plaintiff alleges that *standing* "for any length of time" aggravates his symptoms to the point that he must elevate and ice his extremity. (Doc. No. 12, Pl.'s Mem. of Law Supporting Summ. J. ("Pl.'s Mem.") 12.) However, there is no record evidence to support this allegation—not even in Plaintiff's own testimony at the hearing—and it directly contradicts Dr. Kearney's opinion that Plaintiff could stand for one hour per eight-hour workday. (Tr. 270.) Moreover, Dr. Salmi's RFC stated that Plaintiff could stand/walk for "at least 2 hours" per workday. (Tr. 272.) Therefore, the ALJ's RFC determination is supported by substantial evidence on the record as a whole.

**B.      Whether the ALJ Properly Evaluated the Credibility of Plaintiff's Subjective Complaints**

Plaintiff also alleged that if he walks for any length of time he must elevate and ice his lower extremity. (*See* Tr. 39, 40.) The main point of contention in this

case is whether the ALJ erred by not including a limitation in Plaintiff's RFC addressing elevating and icing Plaintiff's lower extremity, based on the ALJ's conclusion that this claimed limitation was not credible.

The ALJ determined that "[Plaintiff's] statements concerning the intensity, persistence and limiting effects of [his pain] are not credible . . . ."  (Tr. 16.) Plaintiff argues that his subjective complaints are consistent with his medical records, daily activities, and other evidence in the record.  The Commissioner contends that the ALJ reasonably found Plaintiff's daily activities inconsistent with his allegation of disability because Plaintiff was able to drive and use a riding lawnmower and snow blower, which indicates he could perform the restricted range of sedentary work contemplated by the RFC finding.  The Commissioner also argues that Plaintiff's lack of medical visits and reliance on only over-the-counter pain medications undermine his claim of disabling pain.

When determining the credibility of a claimant's subjective complaints, the ALJ must consider evidence of the following factors: (1) the claimant's daily activities; (2) the duration, frequency, and intensity of pain; (3) precipitating and aggravating factors; (4) dosage, effectiveness, and side effects of medication; and (5) functional restrictions.  *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984).  The ALJ must consider each factor, but does not have to discuss each factor in the decision.  *Casey v. Astrue*, 503 F.3d 687, 695 (8th Cir. 2007) (citing *Tucker v. Barnhart*, 363 F.3d 781, 783 (8th Cir. 2004)).  The ALJ may discredit subjective complaints, but '[w]hen rejecting a claimant's complaints of pain, . . .

the ALJ must make an express credibility determination detailing his reasons for discrediting the testimony. *Cline v. Sullivan*, 939 F.2d 560, 565 (8th Cir. 1991) (citing *Ricketts v. Sec'y of Health & Human Servs.*, 902 F.2d 661, 664 (8th Cir. 1990)). "If an ALJ explicitly discredits the claimant's testimony and gives good reason for doing so, [the Court] will normally defer to the ALJ's credibility determination." *Gregg v. Barnhart*, 354 F.3d 710, 714 (8th Cir. 2003); *see also Robinson v. Sullivan*, 956 F.2d 836, 838 (8th Cir. 1992) (stating that if the record could support more than one reasonable conclusion, the reviewing court should affirm the Commissioner's reasonable conclusion).

Here, the ALJ found that the intensity, persistence, and limiting effects of Plaintiff's complaints were inconsistent with his self-reported daily activities. "Significant daily activities may be inconsistent with claims of disabling pain . . . ." *Guilliams v. Barnhart*, 393 F.3d 798, 802 (8th Cir. 2005) (citing *Haley*, 258 F.3d at 748)); *see also Davis v. Apfel*, 239 F.3d 962, 967 (8th Cir. 2001); *but see Tilley v. Astrue*, 580 F.3d 675, 681 (8th Cir. 2009) ("[Plaintiff's] ability to engage in some life activities, despite the pain it caused her, does not mean she retained the ability to work. . . ."). The ALJ found that Plaintiff's daily activities of driving, operating a riding lawnmower, operating a riding snow blower, and occasionally flying were inconsistent with Plaintiff's subjective complaints. (*See* Tr. 17.) The first three of these activities require significant use of one or both feet, and typically the right foot. If Plaintiff were experiencing disabling pain in his right hip, leg, and ankle, it seems unlikely that he would be able to engage in these

physical activities. Therefore, the Court concludes that the ALJ's finding, that Plaintiff's daily activities were inconsistent with his allegations of total disability, is supported by substantial evidence on the record as a whole.

The ALJ also determined that Plaintiff's statements about his alleged need to elevate and ice his lower right extremity were not supported by objective medical evidence. "[A]ny symptom-related functional limitations and restrictions which [Plaintiff] . . . report[s], *which can reasonably be accepted as consistent with the objective medical evidence and other evidence*, will be taken into account . . . in reaching a conclusion as to whether [Plaintiff] is disabled." 20 CFR § 404.1529(c)(3) (emphasis added). "Subjective complaints may be discounted if there are inconsistencies in the evidence as a whole." *Polaski*, 739 F.2d at 1322.

In the extremely thin medical record before the Court, nowhere does a physician recommend that Plaintiff elevate his leg and ice his ankle—in fact, such a treatment is not even discussed in any medical record.[8] Moreover, from his alleged onset date of May 30, 2006, until his administrative hearing on November 16, 2009, Plaintiff sought no treatment for his allegedly disabling conditions,

---

[8]     During three recent medical appointments at Mayo Clinic between 2009 and 2011, Plaintiff's physicians still do not discuss or recommend a treatment involving elevating and icing the lower extremity. (*See* Tr. 298–304.)

which undermines his claim of disabling pain.  (*See* Tr. 17.)[9]  Therefore, the

Court concludes that the ALJ's decision to not include an elevating/icing limitation

in Plaintiff's RFC is supported by substantial evidence on the record.

Pointing to Social Security Ruling ("SSR") 96-7P, Plaintiff asserts that his

allegations concerning "the intensity and persistence of pain or other symptoms

may not be disregarded solely because they are not substantiated by objective

medical evidence."  (Pl.'s Mem. 11 (quoting SSR 96-7P).)  But the same ruling

also states that "the adjudicator must consider the entire case record, including

the objective medical evidence, the individual's own statements about symptoms,

statements or other information provided by . . . physicians . . . and any other

relevant evidence in the case record."  SSR 96-7P.  Furthermore, "statements

about [Plaintiff's] pain or other symptoms will not alone establish that [Plaintiff] is

disabled."  20 CFR § 404.1529(a).  Plaintiff points to no other record evidence to

support his bare assertion of this limitation, and the Court finds none.

Plaintiff also argues that his treatment of choice—elevating his leg and

icing his ankle—is not inconsistent with Dr. Kearney's findings.  (Pl.'s Mem. 13–

14.)  But Plaintiff's alleged need to elevate and ice his extremity throughout the

_____

[9]      In explanation, Plaintiff states that he did not have health insurance, and
thus only saw a doctor in "an extreme emergency."  (Tr. 41.)  This discounts the
possibility of free or reduced fee clinics for individuals without insurance, which
Plaintiff apparently never sought out.  The fact that Plaintiff was able to visit the
Mayo Clinic twice in June 2011, first for abdominal pain and second for lower
extremity pain, weakens Plaintiff's alleged lack of means to seek out medical
attention.  (Tr. 300–04.)

day is inconsistent with Dr. Kearney's finding that Plaintiff can stand up to one hour per day and walk up to two blocks at a time, making no mention of any treatments after these activities other than sitting down.  (Tr. 270.)

Plaintiff also complained that he experienced swelling and pain even when sitting (Tr. 37), which cuts somewhat against the ALJ's RFC determination that Plaintiff can sit for eight hours of an eight-hour day.  (Tr. 15–16.)  But this allegation is inconsistent with Dr. Kearney's recommendation that "[Plaintiff] would need to have a full time sitting job" and is unsupported by any record evidence.  (Tr. 270.)  Thus, in view of the record as a whole, the ALJ did not err when he concluded that the extent of Plaintiff's alleged limitations was not credible.

Plaintiff's credibility is also diminished by the fact that his pain was treated very conservatively.  "A lack of strong pain medication is inconsistent with subjective complaints of disabling pain."  *Haynes v. Shalala*, 26 F.3d 812, 814 (8th Cir. 1994); *see also Singh v. Apfel*, 222 F.3d 448, 453 (8th Cir. 2000); *Murphy v. Sullivan*, 953 F.2d 383, 386 (8th Cir. 1992); *Benskin v. Bowen*, 830 F.2d 878, 881–82 (8th Cir. 1987).  Plaintiff used only over-the-counter medications to treat his pain, such as aspirin and Tylenol.  (Tr. 41.)  He did not take any stronger, prescription pain medications because he did not want to take

a "heavy" drug.[10]  (*Id.*)  Plaintiff could have sought out stronger, non-narcotic pain medications, but he did not.[11]  Thus, the ALJ's conclusion that Plaintiff's conservative symptom treatment further undermined his claim of disabling pain is supported by substantial evidence on the record as a whole.

Plaintiff points out that he has made repeated attempts to return to the workforce since his motorcycle accident in 1984, and he is clearly not a malingerer, both of which militate in his favor.  Still, the ALJ weighed all the evidence in coming to his credibility determination, including his observations of Plaintiff during the hearing.  "The ALJ is in the best position to determine the credibility of the [claimant] and is granted deference in that regard."  *Johnson v. Apfel*, 240 F.3d 1145, 1147 (8th Cir. 2001) (citation omitted).  After reviewing the record, the Court finds that the ALJ's credibility determination is well supported by substantial evidence.

---

[10]  See *supra* note 10 for a discussion of Plaintiff's stated concerns about the cost of seeing a doctor, which he also cited as explanation for a lack of stronger pain medications.  (Tr. 41.)

[11]  For example, during a medical appointment on June 23, 2011, Plaintiff's doctor prescribed Plaintiff 1 g. Tylenol.  (Tr. 302.)  The Court notes that this was prescribed over one year after the ALJ issued his decision.

Based on all of the above, the Court concludes that the ALJ's RFC is supported by substantial evidence on the record as a whole, and the ALJ's determination is upheld.[12]

## CONCLUSION

Based on the foregoing, and all the files, records, and proceedings herein,

**IT IS HEREBY ORDERED** that:

1.    Plaintiff's Motion for Summary Judgment (Doc. No. 11), is **DENIED**;

2.    Defendant's Motion for Summary Judgment (Doc. No. 13), is **GRANTED**; and

3.    This case is dismissed.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Date:  November 1, 2012                    _s/ Jeffrey J. Keyes_____
                                           JEFFREY J. KEYES
                                           United States Magistrate Judge

---

[12]    The record suggests that Plaintiff's physical condition continues to deteriorate over time.  (*See* Tr. 269, 272–73, 302–04.)  But Plaintiff chose to seek judicial review of the Appeals Council's denial of review rather than reapply for disability insurance benefits, which he could have done through his last insured date of December 31, 2011.  (Tr. 13, 149.)